**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **JOSE WILLIAM ORELLANA,** <br><br> Defendant. | **No. 14-CR-4046-DEO** <br><br> **ORDER ON REPORT AND RECOMMENDATION** |

Before the Court is a Report and Recommendation ("R&R"), Docket No. 34, issued by Magistrate Judge Leonard T. Strand concerning the Defendant's Motion to Suppress, Docket No. 20.

Following the hearing on July 29, 2014, Judge Strand issued a R&R recommending that the Motion to Suppress be denied. Docket No. 34. Neither party filed an objection to the Report and Recommendation.

## I. FACTS

Magistrate Strand set out the relevant facts in this matter, See Docket No. 34, p. 2-5. In May of this year, DEA agents arrested Mr. Orellana, a Spanish speaker, during a methamphetamine investigation. He was taken to the Sioux City Police Department where he was interviewed in Spanish through an interpreter. A transcript was made of the interview, which Judge Strand found to be accurate, and so does this Court.

Mr. Orellana was asked to read the Miranda form and sign a waiver if he wished to cooperate, which leads to the present dispute. As stated by Judge Strand:

> [t]he initial report that [DEA Agent] Schmitt prepared and signed on May 15, 2014, states that after [Sioux City Police Officer/translator] Kolker advised him of his rights, Orellana stated: "Yes, but I don't know what it means, but yes." Gov't Ex. 3 at 2. Orellana filed his motion to suppress on June 27, 2014, based on that report. On July 9, 2014, Schmitt prepared and signed a supplemental report in which he stated that based on a review of the Recording, his earlier report was not accurate. Instead, according to the supplemental report, Orellana's actual statement was: "Yes, I don't know what I can answer, yes." Gov't Ex. 4 at 1. The supplemental report further stated that that recorded interview would be "submitted to a contracted Language Center for translation/transcription." Id. Schmitt testified that his initial report was written approximately two days after the interview and was based on his memory and his notes. He testified that his quotation of Orellana's response in the initial report was simply wrong and that he prepared the supplemental report after reviewing the relevant portion of the Recording. The Transcript indicates that after Kolker read the rights aloud in Spanish, she stated: "Do you understand? OK. Are you willing to answer some questions?" Gov't Ex. 2 at 6. The Transcript then quotes Kolker as telling Schmitt that Orellana's response was: "Yes, I don't know what I can answer.

> Yes." Gov't Ex. 2 at 6. And, in fact, the recording captures Kolker reciting this interpretation immediately after Orellana answered. See Gov't Ex. 1 at approximately 1:17:20 p.m. The Transcript, however, includes a slightly-different English interpretation of Orellana's response: "Well, yes. No . . . Well, I don't know, whatever I can answer, yes." Gov't Ex. 2 at 6. The Recording reveals that after reading the Miranda rights aloud in Spanish, Kolker stated one word in Spanish, and then paused. According to the Transcript, that word was "Entiende," which the Transcript translates to English as "Do you understand?" Id. at 5-6. The Recording shows Orellana nodding at that point. See Gov't Ex. 1 at approximately 1:17:08 p.m. After this nod, Kolker stated "OK" and then asked another question in Spanish, which the Transcript translates to English as "Are you willing to answer some questions?" Gov't Ex. 2 at 6. It was at this point that Orellana gave an answer that, according to the Transcript, was "Well, yes. No . . . Well, I don't know, whatever I can answer, yes." Id.

Docket No. 34, p. 3-4. Magistrate Strand went on to say:

> [a]fter careful review of the Transcript and the Recording, I find that Schmitt's initial version of Orellana's response, as set forth in Government Exhibit 3, was incorrect. I further find that Orellana – by nodding – gave a nonverbal affirmative response to Kolker's question of whether he understood the rights Kolker had just recited. When Kolker stated "OK," she was responding to Orellana's nod. In addition, I find that when Kolker then asked Orellana if he was willing to answer some questions,

3

> he stated: "Well, yes. No . . . Well, I don't know, whatever I can answer, yes." I find that this response was affirmative, meaning Orellana communicated that he was, in fact, willing to answer questions. Once Orellana gave this response, Schmitt conducted the interview with Kolker acting as the interpreter. Orellana answered Schmitt's questions without making any comments or asking any questions about his right to remain silent or his right to have an attorney present. His handcuffs were then removed approximately 19 minutes after the interview started. See Gov't Ex. 1 at approximately 1:29 p.m. Questioning continued and Orellana continued to provide answers. Throughout the interview, the atmosphere in the room appears to have been as relaxed as possible under the circumstances. Orellana was provided with water, laughed occasionally and gave no indication that he was acting under duress or compulsion. After some period of time, Task Force Officer Benjamin Gill entered the room and asked additional questions, which Orellana also answered. Later, Officer Cindy Martinez of the Sioux City Police Department took over as the interpreter in the room. Throughout this process, Orellana made various incriminating statements, which he now seeks to suppress.

Docket No. 34, p. 4-5.

After setting out the relevant law, Magistrate Strand found that:

> Orellana argues his waiver was not voluntary, knowing and intelligent. He originally based this argument on the

4

initial report, which indicated that he responded "Yes, I don't know what it means, but yes," when asked if he understood his rights. Now that it is clear (from the Transcript and the Recording) that this was not Orellana's actual response, he has modified his arguments accordingly. He now argues that his response to the questions posed by Kolker, after she read his Miranda rights, was ambiguous because Kolker asked a compound question. He further argues that even if his response can be interpreted as a waiver, the waiver was ineffective because (a) the atmosphere was coercive, (b) the agents failed to follow up on his comment about his lack of education and (c) the agents failed to determine whether he was under the influence of methamphetamine or any other substance. These arguments are unavailing... Orellana indicated both (a) that he understood his rights and (b) that he was willing to answer questions. He then proceeded to answer questions. I reject Orellana's argument that he did not communicate an express waiver of his Miranda rights. I further find the Government has met its burden of proving that the waiver was given knowingly, voluntarily and intelligently. As for knowingly and intelligently, the Transcript and the Recording show that Orellana read the rights aloud in Spanish, had them read aloud again by Kolker in Spanish and then responded affirmatively when asked if he understood the rights. Orellana was thus told, and indicated he understood, that he did not have to answer questions, that anything he said could be used against him in court, that he had the right to consult with an attorney and have the attorney present during questioning, and that the

5

> attorney would be provided for him if he
> could not afford one. Gov't Ex. 2 at 5-6.

Docket No. 34, p. 7-8. Magistrate Strand goes on to state that Mr. Orellana has sufficient intelligence to understand his rights, and there is no evidence he was impaired at the time of the interview. Finally, Magistrate Strand found that Mr. Orellana's statements were voluntary and were not coerced. Magistrate Strand concluded:

> [t]he entire interview, including the discussion that led to Orellana's waiver of Miranda rights, was nothing other than a normal, routine interview of a suspect by law enforcement. The Government has met its burden of proving by a preponderance of the evidence that Orellana voluntarily, knowingly and intelligently waived his Miranda rights prior to making the incriminating statements at issue. Orellana is not entitled to the suppression of those statements.

Docket No. 34, p. 9.

**II. STANDARD**

Pursuant to statue, this Court's standard of review for a magistrate judge's Report and Recommendation is as follows:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings

6

> or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1).

Similarly, Federal Rule of Civil Procedure 72(b) provides for review of a magistrate judge's Report and Recommendation on dispositive motions and prisoner petitions, where objections are made as follows:

> The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommendation decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

FED. R. CIV. P. 72(b).

Additionally, failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. United States v. Wise, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**III. ANALYSIS**

The Court has reviewed the Report and Recommendation, along with the entire file. As discussed above, neither party objected to Magistrate Strand's Report and Recommendation. The Court is persuaded that the Magistrate's analysis is correct, and his R&R should be adopted in its entirety. Specifically, the Court finds that Mr. Orellana unambiguously, knowingly and intelligently waived his Miranda rights and agreed to answer questions. The officers did not coerce Mr. Orellana's statements, they were voluntary, and there are no grounds for suppression. Accordingly, the Defendant's Motion to Suppress, Docket No. 20, must be **denied**.

**IV. CONCLUSION**

The Magistrate's Report and Recommendation is accepted an and adopted as set out above. The Defendant's Motion to Suppress, Docket No. 20, is **denied**.

**IT IS SO ORDERED** this 20th day of August, 2014.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa